# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF INDIANA
# INDIANAPOLIS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Cause No. 1:18-cr-4-WTL-DML |
| ) | |
| BRYAN VIVAS, ) | |
| ) | |
| Defendant. ) | |

## ENTRY ON MOTION TO SUPPRESS

This cause is before the Court on Defendant Bryan Vivas' Motion to Suppress (Dkt. No. 21). Vivas argues that 1) there was not probable cause to issue a search warrant; and 2) because he was in custody but was not given *Miranda* warnings, the statements he made and the evidence obtained from his consent to search his email should be suppressed. The Court held a hearing on the motion on August 8, 2018. Pursuant to Federal Rule of Criminal Procedure 12(d), the Court now states its findings and conclusions. For the reasons explained herein, Vivas' Motion to Suppress Evidence is **DENIED**.

### I. BACKGROUND FACTS[1]

John Pirics, a detective with the Carmel Police Department who is assigned to the Hamilton County Metro Child Exploitation Task Force, submitted an application and affidavit in support of the application for a search warrant for 5321 Rippling Brook Way in Carmel, which was Vivas' residence. The Affidavit provided, in relevant part:

---

[1] The facts are taken from the exhibits filed as part of the motion to suppress and response, exhibits admitted at the hearing, and testimony from the hearing.

> **6. Present investigation:** I received lead information from the Federal Bureau of Investigation, Indianapolis Office. On March 24, 2014, an email was sent to an undercover email account under the control of law enforcement. The title of the email was "TRADE", and in the body of the email the sender had written "hi,,, can we trade pics/ vids or link???   pics/vids zip/ rar file,,, OK".    There were two attachments in the message - "6pussy.rar" and "Sample 1.zip".
>
> **7. "Samplel.zip":** I extracted the contents of "SampleLzip" and found that it contained twenty image files. I reviewed the images that had been uploaded, and observed that several of the images appeared to be minor female children engaged in sexually explicit conduct as defined in 18 U.S.C. § 2256(2)(A)(i-v). Two of the images are described below.

Dkt. No. 22-1 at 6.

The email was sent to twelve additional email accounts; one of the accounts was crastrillo@yahoo.com. Additional investigation revealed that that email address had been accessed from 5321 Rippling Brook Way in Carmel.

Pirics testified at the hearing that several characteristics of the email informed his decision that there was probable cause to search the house. First, both of the attachments were compressed files that included several files containing child pornography. Second, emails containing child pornography that are sent to a group of people usually indicate the presence of ongoing criminal activity. The title of the email, "TRADE," indicated to Pirics that the email sender and recipients had a relationship that involved the trading of child pornography files.

When officers arrived at Vivas' home, Pirics was wearing jeans and an untucked button-down shirt, as was Special Agent Michael Johnson, who approached the residence with Pirics. Pirics was wearing a firearm, but the firearm was on his belt concealed under his shirt. He assumed that Johnson was wearing a firearm, but Pirics did not see the firearm. Other Task Force officers remained in their car rather than approaching the door with Pirics and Johnson.

Vivas answered the door. Pirics and Johnson identified themselves and explained that

they were there to execute a search warrant on the residence. Pirics also told Vivas that the search warrant was related to the email address crastrillo23@yahoo.com. Vivas let Pirics and Johnson into the residence. Three assisting officers then left the car and also entered the residence.

Vivas indicated that Vivas' wife was in the residence, and Pirics asked Vivas to go get her. Vivas went upstairs to get his wife, and she came downstairs with him. Johnson and Pirics followed Vivas and Vivas' wife into the living room area while the other officers set up computer equipment in the kitchen area. Vivas and his wife were shown a copy of the search warrant, and Pirics again explained that officers were there to execute a search warrant on the residence and that the search warrant was related to the email address crastrillo23@yahoo.com, which Pirics believed was used by Vivas. Pirics explained that no one was under arrest and that he would like to speak to Vivas. Pirics told Vivas' wife that she was free to leave and that officers wanted to speak with Vivas alone.

Pirics did not recall Vivas or Vivas' wife asking if they needed an attorney, but he testified that, if either did ask, he would not have told them that they did not need an attorney. Vivas and Vivas' wife dispute this fact. Both testified that Mrs. Vivas asked officers whether the Vivases needed to contact an attorney but that one of the officers told her that the officers only wanted to have a conversation with Vivas and that no one was in any trouble.

Pirics asked Vivas if Vivas had any electronic devices, and Vivas responded that he had a tablet. Johnson and Pirics followed Vivas upstairs, where Vivas got the tablet and gave it to Johnson. Johnson took the tablet into the kitchen to begin reviewing it. Pirics followed Vivas into the living room and began to record the interview.

3

About sixteen minutes into the interview, another person talked nearby. Pirics testified that Vivas appeared uncomfortable and stopped talking. Pirics asked Vivas if Vivas would prefer to continue the interview in the Vivases' home office for more privacy. Vivas indicated that he would. They then went into the office.

Pirics stated that he never displayed his firearm or raised his voice, and he never saw other agents or officers display their weapons or heard them raise their voices. Vivas was never restrained or handcuffed.

There is a dispute as to whether another officer stood outside the office door while Pirics and Johnson spoke to Vivas. Vivas and his wife testified that officers were standing guard outside the door. Pirics, however, testified that an officer was not standing outside the door. The Court finds Pirics' testimony credible. Pirics' testimony is supported by the recording; when Johnson went to get officers to stay with Vivas while Pirics and Johnson made phone calls, it took approximately three minutes for another officer to arrive.

During the interview, Pirics asked Vivas for consent to access the crastrillo23@yahoo.com email address. Pirics informed Vivas that officers had sent a form that allowed them to preserve the email account so that they could search it later if they wanted to try to get a search warrant. Pirics stated that it would be easier if Vivas would consent to search the email account. Vivas then provided the password for the email account, and Pirics read the consent form out loud and again told Vivas that he did not have to consent. Pirics stated that if Vivas did not consent, Pirics would go and apply for a search warrant and see if a judge would give officers a warrant to search the email. Vivas then signed the consent to assume online identity, which authorized officers to access and use the crastrillo23@yahoo.com email account.

The interview with Vivas lasted approximately ninety minutes. Vivas made statements regarding his possession, receipt, and distribution of child pornography. After the interview was concluded, Vivas was arrested on state charges.

## II. DISCUSSION

### A. Probable Cause to Issue a Search Warrant

Vivas first argues that there was not probable cause to issue a search warrant. The only electronic device seized as a result of the federal search warrant was the tablet that Vivas provided to Johnson. The Court will assume for the purposes of this motion that Vivas is correct and that there was not, in fact, probable cause to issue the warrant.

However, even if there was not sufficient probable cause for the search warrant to be issued, suppression would be appropriate "only if the officers . . . could not have harbored an objectively reasonable belief in the existence of probable cause." *United States v. Pless*, 982 F.2d 1118, 1125 (7th Cir. 1982) (quoting *United States v. Leon*, 468 U.S. 897, 922-23 (1984)). To determine if the officer exhibited good-faith reliance, the Court is to ask whether "a reasonably well-trained officer would have known that the search was illegal despite the magistrate's authorization." *United States v. Dickerson*, 975 F.2d 1245, 1249 (7th Cir. 1982) (quoting *Leon*, 468 U.S. at 922 n.34)). In the ordinary case, police officers "cannot be expected to question" a magistrate's determination that probable cause to search existed. *Illinois v. Krull*, 480 U.S. 340, 349 (1987).

"An officer's decision to obtain a warrant is prima facie evidence of good faith." *United States v. Woolsey*, 535 F.3d 540, 546 (7th Cir. 2008) (citations omitted). In order to rebut this presumption, the defendant must show that either "the issuing judge abandoned his role as a

neutral and detached arbiter, that the officers were dishonest or reckless in preparing the supporting affidavit, or that the affidavit was so lacking in probable cause that no officer could have relied on it." *United States v. Mykytiuk*, 402 F.3d 773, 777 (7th Cir. 2005). There is nothing to suggest that the issuing judge was not neutral or detached or that the officers were dishonest or reckless in preparing the affidavit. As such, the Court will consider only whether the affidavit was so lacking in probable cause that no officer could have relied on it.

A defendant can establish unreasonable reliance only if "courts previously have clearly held that a materially similar affidavit failed to establish probable cause under facts that were indistinguishable from those presented in the case at hand, [or] the affidavit is so plainly deficient that any reasonably well-trained officer would have known that his affidavit failed to establish probable cause and that he should not have applied for the warrant." *Woolsey*, 535 F.3d at 548 (quotation and citation omitted). Vivas has not cited, and the Court has not found, a case in which a court has held that a materially similar affidavit failed to establish probable cause under facts that are indistinguishable from the facts at hand.

With regard to whether the affidavit was so plainly deficient that any reasonably well-trained officer would have known that his affidavit failed to establish probable cause and that he should not have applied for the warrant, the affidavit here discussed general information such as Pirics' experience and training, understanding of computer and child pornography offenses, how collectors of child pornography use resources such as Yahoo to set up an account, the types of evidence recovered from computers, and email data and storage. It also included information specific to the email at issue, including the fact that Vivas' email was one of twelve in an email group titled "TRADE," the sender asked whether the recipients would trade pics/vids or link, and

6

the attachments contained twenty images that were child pornography. Additionally, Pirics testified at the hearing that he has had search warrants issued in many cases based on a single email being sent or received or a single attachment being uploaded to an email account. These cases included cases where the single email being received, without evidence that the email had been solicited or opened, was sufficient to obtain a search warrant to search a residence. Based on these facts, the Court finds that the affidavit was not so plainly deficient that any reasonably well-trained officer would have known that his affidavit failed to establish probable cause and that he should not have applied for the warrant

In sum, Vivas has not cited to any case involving a materially similar affidavit and cannot establish that the affidavit is so plainly deficient that a reasonable officer could not be expected to know that the warrant was not supported by probable cause. *See United States v. Glover*, 755 F.3d 811, 829 (7th Cir. 2014) Accordingly, Vivas has failed to rebut the presumption of good faith reliance, and the evidence seized as a result of the search warrant will not be suppressed. As such, the Court need not determine whether Vivas' consent to search the email was tainted by an illegal search. *See United States v. Valencia*, 913 F.2d 378, 382 (7th Cir. 1990).

### B. Vivas' Statements

Vivas also argues that the statements he made were obtained while he was in custody and did not have the benefit of *Miranda* warnings. As such, Vivas argues, his statements and the evidence obtained as a result of Vivas' consent to search and use his email should be suppressed.

*Miranda* applies only when an individual is subject to custodial interrogation. *See, e.g.*, *California v. Beheler*, 463 U.S. 1121 (1983) (per curiam); *United States v. Shlater*, 85 F.3d 1251, 1256 (7th Cir. 1996). An individual is considered to be in custody when his movement is

restrained to the degree comparable to a formal arrest. *United States v. Yusuff*, 96 F.3d 982, 987 (7th Cir. 1996). "[T]he initial determination of custody depends on the objective circumstances of the interrogation, not on the subjective views harbored by either the interrogating officers or the person being questioned." *United States v. James*, 113 F.3d 721, 726 (7th Cir. 1997) (quoting *Stansbury v. California*, 511 U.S. 318, 323 (1994)).

In determining whether a reasonable person in the suspect's shoes would have felt free to leave, the Court considers "all of the circumstances surrounding the interrogation." *Howes v. Fields*, 565 U.S. 499, 509 (2012) (citation omitted and internal quotation marks omitted). Relevant factors include the location of the questioning, its duration, statements made during the interrogation, the presence or absence of physical restraints during the questioning, and the release of the interviewee at the end of questioning. *Id.*; *see also United States v. Ambrose*, 668 F.3d 943, 956 (7th Cir. 2012) (in determining whether a person is in custody, a court should consider, among other things, whether the encounter occurred in a public place, whether the suspect consented to speak with officers, whether the officers informed the suspect that he was not under arrest, whether the interviewee was moved to another area, whether there was a threatening presence of several officers and a display of weapons or physical force, whether the officers deprived the suspect of documents needed to depart, and whether the officers' tone was such that their requests were likely to be obeyed).

Here, the questioning took place in Vivas' home. While the questioning moved from the kitchen to the Vivases' home office, where the door was closed, Vivas had indicated that he wanted to go somewhere more private. Further, although Vivas indicated that he knew that two of the officers were armed, no weapons were ever drawn. None of the officers were in uniform.

Vivas was not handcuffed. Vivas never asked to leave or attempted to leave his home or the office. Vivas' wife and son were present in the home and moved about while the officers talked with Vivas. The interview lasted approximately ninety minutes, and the tone was not hostile or combative.

Vivas testified that he felt as if his every move was being watched and that he did not feel free to leave. His understanding of law enforcement practices in his native country of Colombia also led him to believe that he needed to cooperate with law enforcement officials. However, the officers repeatedly informed him that he was not under arrest and that he did not need to talk with them. While, of course, those types of statements by officers are not dispositive, *see United States v. Slaight*, 620 F.3d 816 (7th Cir. 2010), here the circumstances surrounding the interview would not have led an average person to believe that he was not free to leave or refuse to answer.

Based on the above circumstances, the Court finds that the circumstances surrounding the interrogation support a finding that Vivas was not in custody.[2] As such, Vivas' *Miranda* rights had not attached, and the statements were not obtained in violation of his Fifth Amendment rights.

---

[2]Assuming for the purposes of this motion that Vivas' wife did ask Johnson whether Vivas needed an attorney, such a question—even if asked by the person being questioned—is not a clear invocation of the right to counsel. *See United States v. Wysinger*, 683 F.3d 784,794-95 (7th Cir. 2012). Further, as Vivas was not in custody during any questioning, he did not have the right to have an attorney at that time, as the Fifth Amendment right to counsel safeguarded by *Miranda* cannot be invoked when a suspect is not in custody, even if in anticipation of future custodial interrogation. *United States v. Wyatt*, 179 F.3d 532, 537 (7th Cir. 1999).

## III. CONCLUSION

For the foregoing reasons, Vivas' Motion to Suppress (Dkt. No. 21) is **DENIED**.

SO ORDERED: 8/20/18

_____
Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Copies to all counsel of record via electronic notification